**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Star Insurance Company, | ) | **ORDER GRANTING IN PART** |
| | ) | **AND DENYING IN PART** |
| Plaintiff, | ) | **SUMMARY JUDGMENT** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:12-cv-121 |
| Continental Resources, Inc., Cyclone | ) | |
| Drilling, Inc., Plaster & Wald Consulting | ) | |
| Corp., Torus Specialty Insurance Company, | ) | |
| M-I, LLC, Zurich American Insurance | ) | |
| Company, National Union Fire Insurance | ) | |
| Company of Pittsburgh, PA, and Travelers | ) | |
| Property Casualty Company of America, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Before the Court are two motions for summary judgment filed by Plaintiff Star Insurance Company. See Docket Nos. 177 and 219. Also before the Court are motions for summary judgment filed by Defendants Continental Resources, Inc. and Zurich American Insurance Company. See Docket Nos. 213 and 215. In addition, Defendant Travelers Property Casualty Company has filed a motion to dismiss for lack of jurisdiction, or, in the alternative, a motion for summary judgment. See Docket No. 201. The motions have been fully briefed and are ripe for consideration. For the reasons set forth below, the motions are granted in part and denied in part.

I.      **BACKGROUND**

This is a declaratory judgment action brought by Star Insurance Company ("Star Insurance") pursuant to 28 U.S.C. §§ 2201-2202. The case presents a complex web of disputes involving four oil and gas companies, five insurance companies, and at least seven different insurance policies.

The underlying dispute arises out of an explosion and fire at an oil and gas well located near Beach, North Dakota, on or about July 25, 2011, which severely injured three employees of Cyclone Drilling, Inc. ("Cyclone Drilling"). The Cyclone Drilling employees sued Continental Resources, Inc. ("Continental Resources"), Plaster and Wald Consulting Corp. ("Plaster & Wald"), M-I, LLC ("M-I"), and others for their injuries in state court in the District Court for the Northwest Judicial District of North Dakota, Williams County. The record reveals that all of the claims brought by the three injured Cyclone Drilling employees have now been settled. In settling the claims, the insurance carriers reserved all rights to litigate their coverage disputes in this declaratory judgment action in federal court. Star Insurance commenced this declaratory judgment action on September 7, 2012, seeking a determination of its coverage obligations.

Continental Resources was the operator of the well. Cyclone Drilling, M-I, and Plaster & Wald were subcontractors of Continental Resources performing work at the well site. Cyclone Drilling was the driller. M-I was the drilling fluids consultant. Plaster & Wald was the drilling consultant. Plaster & Wald provided Continental Resources a "company man" on the well site who acted as Continental's eyes and ears on location. Cyclone Drilling, M-I, and Plaster & Wald all had separate master service contracts with Continental Resources.

At the time of the accident, Cyclone Drilling's relationship with Continental Resources was defined by a master service contract dated February 15, 1999, and an International Association of Drilling Contractors Drilling Bid Proposal and Daywork Drilling Contract ("IADC Drilling Contract") with an effective date of December 15, 2010. Both the master service contract and the IADC Drilling Contract with Cyclone Drilling contain indemnity provisions in favor of Continental Resources.

Star Insurance provides insurance coverage to Cyclone Drilling. <u>See</u> Docket Nos. 6-7 and 6-11. The primary policy provides general liability coverage with limits of $1 million per occurrence (defined as an "accident") and $2 million in aggregate. <u>See</u> Docket No. 6-7, p. 70. An umbrella policy provides excess coverage with a limit of $5 million per occurrence and $5 million in the aggregate. <u>See</u> Docket No. 6-11. Continental Resources is named as an additional insured in the Star Insurance policies. <u>See</u> Docket No. 6-4, p. 4.

Zurich American Insurance Company ("Zurich") insures Continental Resources. <u>See</u> Docket No. 6-9. The Zurich primary policy has limits of $1 million per occurrence and $2 million in aggregate. <u>See</u> Docket No. 6-9, p. 2.

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") also insures Continental Resources. The National Union umbrella policy has limits of $25 million per occurrence and $25 million in the aggregate. <u>See</u> Docket No. 6-13 at 3.

Travelers Property Casualty Company of America ("Travelers") insures M-I. <u>See</u> Docket No. 6-10. The Travelers policy has limits of $1 million per occurrence and $10 million in the aggregate. <u>See</u> Docket No. 6-10, p. 21.

Continental Resources and M-I seek defense and indemnification from Cyclone Drilling and/or Star Insurance. Star Insurance is providing a defense to Continental Resources under the Star Insurance primary policy subject to a full reservation of its rights. Star Insurance denies that it is obligated to defend or indemnify M-I. Star Insurance has paid $2 million in defense of Continental and toward settlement of the underlying personal injury claims. M-I requested that Continental Resources defend and indemnify it in connection with the underlying claims, and Continental Resources has done so.

In an order granting partial summary judgment dated January 23, 2014, this Court ordered and declared as follows:

1)      The IADC Drilling Contract supersedes the master service contract entered into between Continental Resources and Cyclone Drilling. The IADC Drilling Contract, including the insurance and indemnity provisions, is the controlling agreement between Continental Resources and Cyclone Drilling with respect to the work at the well site where the underlying accident occurred on or about July 25, 2011.

2)      Cyclone Drilling was contractually obligated to provide Continental Resources with a minimum of $2 million in insurance coverage with respect to the work at the well site where the underlying accident occurred.

3)      Plaster & Wald is a "consultant" within the meaning of paragraph 14.13 of the IADC Drilling Contract and is entitled to all the indemnification protections specified in the contract.

4)      Cyclone Drilling owes Continental Resources an indemnity obligation as per the terms of the IADC Drilling Contract entered into between the parties on or about December 15, 2010.

See Docket No. 174, p. 22.

On September 4, 2014, Star Insurance, Plaster & Wald, and Torus Specialty Insurance Company ("Torus") filed a joint stipulation of voluntary dismissal. See Docket No. 221. The Court adopted the stipulation and dismissed the claims between the parties without prejudice on September 5, 2014. See Docket No. 222.


II.      **STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there

4

are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.


III.  **LEGAL DISCUSSION**

    A.  **STAR INSURANCE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Star Insurance raises two legal issues in its motion for partial summary judgment. The first issue relates to the scope of insurance coverage Continental Resources is entitled to from Star Insurance. The second issue relates to the scope of indemnity Continental Resources is entitled to from Cyclone Drilling. Star Insurance contends its obligation to Continental Resources and Cyclone Drilling's obligation to Continental Resources are capped at $2 million. Before addressing these issues the Court will address the issue of standing raised by Continental Resources in its response

to the motion.


1.    **STANDING**

Continental Resources contends that Star Insurance, as a non-party to the IADC Drilling Contract, lacks standing with respect to the second issue raised in its motion relating to the scope of indemnity Cyclone Drilling owes Continental Resources under the IADC Drilling Contract. Star Insurance contends it is entitled to have its insured's obligations determined by the Court because Cyclone Drilling's liability directly impacts its obligations.

The Court concludes as a matter of law that Star Insurance has standing. First, Cyclone Drilling has joined in the second issue raised by Star Insurance's motion so the Court needs to address the issue. See Docket No. 184. Second, the purpose the Declaratory Judgment Act is to enable parties uncertain of their legal rights and obligations to seek a declaration of their rights and obligations thereby promoting the settlement of the controversy in an expedient and economic fashion before duties are breached. 10 Federal Procedure, L. Ed. Declaratory Judgments § 23:2 (2007). Standing to commence an action under the Declaratory Judgment Act requires a plaintiff to have a practical interest in the declaration sought. Id. at § 23:26. Courts will not decide abstract issues or hypothetical questions. The question presented here is not abstract or hypothetical. Several million dollars of insurance coverage are at stake. All of the underlying personal injury claims have been settled, and the question that remains is which party must pay and in what amounts. Since Star Insurance insures Cyclone Drilling, it has a clear and concrete interest in the matter and thus has standing. See Clarendon Nat. Ins. Co. v. United Fire & Cas. Co., 571 F.3d 749, 753(8th Cir. 2009) (a coverage dispute where one insurance company has demanded another

insurance company be fully involved in the defense of personal injury claims creates an actual controversy sufficient to support an action under the Declaratory Judgment Act to determine priority of coverage).

### 2. SCOPE OF COVERAGE STAR INSURANCE OWES CONTINENTAL

Star Insurance seeks a declaration that its obligation to Continental Resources, as an additional insured under the policies issued to Cyclone Drilling, is capped at $2 million. Continental Resources contends that $6 million in coverage is available to it as an additional insured. In addition, Continental Resources contends coverage is available to it as Cyclone Drilling's indemnitee. As previously noted, the primary policy has a limit of $1 million per occurrence (per accident) and the umbrella policy has a limit of $5 million per occurrence. It is undisputed that Continental Resources is an additional insured under both policies.

The record reveals that Star Insurance has already contributed $1 million under the primary policy and $1 million under the umbrella policy to settle the underlying claims brought against Continental Resources. See Docket No. 180, p. 2. Since the primary policy has a $1 million per occurrence limit, Star Insurance has satisfied its obligations to Continental Resources under the primary policy.

Star Insurance bases its contention that its coverage obligation to Continental Resources is capped at $2 million on a provision in the umbrella policy which states as follows:

> 3. Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.
>
> If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by

any "underlying insurance".

See Docket No. 6-11, p. 22 (emphasis added).

It is clear the coverage provided to Continental Resources as an additional insured is required by the IADC Drilling Contract. This Court previously determined in an order dated January 23, 2014, that "Cyclone Drilling was contractually obligated to provide Continental Resources with a minimum of $2 million in insurance coverage." See Docket No. 174, p. 22. However, this determination does not affect Continental Resources in its capacity as an indemnitee of Cyclone Drilling. As the Court will explain below, Star Insurance Company's policies cover Cyclone Drilling's indemnity obligation to Continental Resources, and that obligation is without limit. Therefore, the Court finds that Continental Resources is entitled to the full amount of Cyclone Drilling's coverage under both the primary and umbrella policies. This coverage amounts to the sum of $1 million in general liability coverage per occurrence plus $5 million in coverage per occurrence under the umbrella policy, for total coverage of $6 million.

**3.    SCOPE OF INDEMNITY CYCLONE OWES CONTINENTAL**

Star Insurance seeks a declaration that Cyclone Drilling's indemnity obligation to Continental Resources is capped at $2 million. Continental Resources contends the contractual indemnity obligation is without limit.

The IADC Drilling Contract provides it is to be construed and interpreted under North Dakota law. See Docket no. 6-5, ¶ 18. The indemnity provisions in the IADC Drilling Contract between Cyclone Drilling (Contractor) and Continental Resources (Operator) provides as follows:

14.8 Contractor's Indemnification of Operator: Contractor shall release Operator of any liability for, and shall protect, defend and indemnify Operator from and against

all claims, demands, and causes of action of every kind and character, **without limit and without regard to the cause or causes thereof or the negligence of any party or parties**, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors of any tier (inclusive of any agent or consultant engaged by Contractor) or their employees, or Contractor's invitees, on account of bodily injury, death or damage to property. **Contractor's indemnity under this Paragraph shall be without regard to and without any right to contribution from any insurance maintained by Operator** pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnitee voluntarily assumed under Subparagraph 14.8 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

14.13 Indemnity Obligation: Except as otherwise expressly limited in this Contract, **it is the intent of parties hereto that** all releases, **indemnity obligations** and/or liabilities assumed by such parties under terms of this Contract including, without limitation, Subparagraphs 4.9 and 6.3(c), Paragraphs 10 and 12, and Subparagraphs 14.1 through 14.1a hereof, **be without limit** and without regard to the cause or causes thereof including, but not limited to, pre-existing conditions, defect or ruin of promises or equipment, strict liability, regulatory or statutory liability, product liability, breach of representation or warranty (express or implied), breach of duty (whether statutory, contractual or otherwise) any theory of tort, breach of contract, fault, the negligence of any degree or character (regardless of whether such negligence is sole, joint or concurrent, active, passive or gross) of any party or parties, including the party seeking the benefit of the release, indemnity or assumption of liability, or any other theory of legal liabi1ity. The indemnities, and releases and assumptions of liability extended by the parties hereto under the provisions of Subparagraph 4.9 and 6.3 and Paragraphs 10, 12 and 14 shall inure to the benefit of such parties, their co-venturers, co-lessees, joint owners, their parent, holding and affiliated companies and the officers, directors, stockholders, partners, managers, representatives, employees, consultants, agents, servants and insurers of each. Except as otherwise provided herein, such indemnification and assumptions of liability shall not be deemed to create any rights to indemnification in any person or entity not a party to this Contract, either as third party beneficiary or by reason of any agreement of indemnity between one of the parties hereto and another person or entity not a party to this Contract.

See Docket No. 6-5, ¶¶ 14.8 and 14.13 (emphasis added).

The Court has determined that "Cyclone Drilling owes Continental Resources an indemnity

obligation as per the terms of the IADC Drilling Contract." See Docket No. 174, p. 22. The express terms of the IADC Drilling Contract clearly and unambiguously provide that Cyclone Drilling's indemnity obligation to Continental Resources is "without limit." Paragraph 14.8 provides "Contractor [Cyclone Drilling] shall release Operator [Continental Resources] of any liability for, and shall protect, defend and indemnify Operator . . . without limit." Paragraph 14.13 provides "it is the intent of parties hereto that all releases, indemnity obligation . . . be without limit." The Court finds that there is no language in either paragraph 14.8 or 14.13 of the IADC Drilling Contract that limits Cyclone Drilling's indemnity obligation.

Despite the clear language of the contract, Star Insurance contends that under North Dakota law the amount of insurance required by an indemnity agreement acts as a limit on the amount of indemnification. See Rupp v. Am. Crystal Sugar Co., 465 N.W.2d 614 (N.D. 1991); see also Poitra v. Park Constr. Co., Inc., 9 F.3d 114 (8th Cir. 1993) (unpublished).

In *Rupp*, two employees of a roofing company fell while re-roofing an American Crystal Sugar Company ("American Crystal") building. Rupp, 465 N.W.2d at 615. One employee was killed and the other was severely injured. Lawsuits were filed against American Crystal which tendered defense of the lawsuits to the roofing company and its insurer based upon the indemnity provisions in the construction agreement. The insurer rejected the tender of defense. American Crystal then brought an indemnity action against the roofing company for any amounts that may be adjudged against it in the personal injury actions. The personal injury lawsuits were settled. American Crystal obtained summary judgment in the indemnity action and was awarded the full amount paid to settle the personal injury claims, which amounted to $624,000. The roofing company appealed on a number of issues including whether the proper measure of damages was

applied.

The North Dakota Supreme Court found the district court had erred in ordering indemnity in excess of the minimum amount of liability insurance required by the construction contract. 465 N.W.2d at 618. The construction agreement required the roofing company to obtain liability insurance with limits of not less than $250,000 per person per occurrence and not less than $500,000 in the aggregate per occurrence, and name American Crystal as an additional insured. Id. at 615. The roofing company obtained more insurance coverage than was required, securing co-insurance which provided liability coverage with a limit of $500,000 per occurrence, and umbrella coverage with a limit of $3,000,000 per occurrence. Id. at 618. The construction agreement did not place any clear upper limit on the indemnity obligation. With little explanation, the North Dakota Supreme Court held American Crystal was not entitled to be indemnified by the roofing company in an amount higher than the minimum insurance coverage American Crystal required the roofing company to secure. Id. at 619. The North Dakota Supreme Court explained in a footnote that its holding was based on the language of the hold harmless and insurance provisions in the construction agreement. Id. at 619 n.4. Left unsaid in the opinion was what specific language in the hold harmless and insurance provisions the Supreme Court had relied upon.

Star Insurance reads *Rupp* as establishing a broad, all-encompassing rule that if a contract contains an indemnity agreement which requires the indemnitor to obtain a minimum amount of insurance and name the indemnitee as an additional insured, the indemnitor's indemnity obligation is capped at the minimum amount of insurance required by the contract. Research has not revealed any cases where *Rupp* has been applied in such a fashion. The only case which cites *Rupp* on this point is an unpublished opinion of the Eighth Circuit Court of Appeals. See Poitra, 9 F.3d at *1

(finding *Rupp* inapplicable because the contract language at issue did not require the indemnitee to be named as an additional insured). The broad construction given *Rupp* by Star Insurance is not supported by any North Dakota case law handed down since *Rupp* was decided in 1991. The Court specifically notes that in this case, unlike *Rupp,* the minimum amount of insurance coverage required by the IADC Drilling Contract was unknown. The IADC Drilling Contract did not specify or require any minimum amount of insurance coverage, a critical element of *Rupp*. That critical part of the contract was left blank. The minimum amount of insurance was supplied by the Court in the January 23, 2014, order issued more than three years after the contract was executed in December 2010. See Docket No. 174 (explaining it was left up to the court to supply the omitted term).

The *Rupp* decision does not stand for the proposition that a party, which agrees to provide indemnification to another, yet fails to specify any minimum amount of insurance coverage within the contract, is able to later limit their indemnity obligation to an amount which a court (rather than the executed contract) supplies. As both Cyclone Drilling and Star Insurance acknowledge, *Rupp* applies when specific insurance limits are required by the *contract*. The governing contract in this case contained no insurance limits.

The IADC Drilling Contract required Cyclone Drilling to have Continental named as an additional insured on its insurance policy, but the contract did not require or suggest a specific limit of insurance. Thus, one of the two necessary factors required under *Rupp* in order to find an indemnitor's obligations to be limited is not met. As a result, Cyclone Drilling's indemnity obligations are not limited in accordance with *Rupp*.

As this Court reads *Rupp*, courts must look to the specific language in the contract to determine the outer limits of an indemnification obligation. This narrow application of *Rupp*

preserves traditional contract principles. The IADC Drilling Contract at issue is clear. Paragraph 14.13 states "it is the intent of parties hereto that all . . . indemnity obligations . . . assumed by such parties under terms of this Contract . . . be **without limit**." Paragraph 14.8 states that Cyclone Drilling "shall . . . indemnify [Continental Resources] from and against all claims, demands, and causes of action of every kind and character, **without limit** and without regard to the cause or causes thereof or the negligence of any party or parties." The Court finds as a matter of law that there is no language contained in either paragraph 14.13 or 14.8 which can be read as limiting Cyclone Drilling's indemnity obligation either in terms of the amount of coverage or the types of claims covered. Cyclone Drilling's indemnity obligation to Continental Resources under the IADC Drilling Contract is clearly "without limit," and elementary rules of contract construction compel this result.

**B**.    **ZURICH'S MOTION FOR SUMMARY JUDGMENT**

Zurich insures Continental Resources and Star Insurance insures Cyclone Drilling. The Court has determined that Cyclone Drilling's obligation to indemnify Continental Resources is without limit. The Court determined in its order dated January 23, 2014, that "Plaster & Wald is a 'consultant' within the meaning of paragraph 14.13 of the IADC Drilling Contract and is entitled to all the indemnification protections specified in the contract." See Docket No. 174, p. 22. Zurich contends Cyclone Drilling's indemnity obligation in the IADC Drilling Contract includes insurers as well as consultants. Zurich contends it is entitled to summary judgment declaring its right to be reimbursed by Cyclone Drilling and/or Star Insurance for the $1 million Zurich contributed to settle the underlying personal injury claims brought by the Cyclone Drilling employees. Zurich also contends Star Insurance's obligation to defend and indemnify Continental Resources, as an

additional insured under the policy Star Insurance issued to Cyclone Drilling, is primary and exclusive to any obligation of Zurich to defend and indemnify Continental Resources. Cyclone Drilling and Star Insurance contend Cyclone's indemnity obligations under the IADC Drilling Contract do not extend to Zurich, and the Star Insurance policies are excess to the Zurich policy

### 1.    CYCLONE DRILLING'S INDEMNITY OBLIGATION TO ZURICH

As previously noted, the Court determined in a previous order granting partial summary judgment, that Cyclone Drilling's indemnity obligations in the IADC Drilling Contract extended "in clear and unambiguous language, to a long and broad list of others, including 'consultants'" and that Plaster & Wald was a consultant for Continental Resources. See Docket No. 174, p. 18. Among the long list of others in paragraph 14.13 are "insurers." Clearly, Zurich American Insurance Company, as an insurer of Continental Resources, qualifies as an "insurer" under the terms of the IADC Drilling Contract. This conclusion is consistent with the Court's prior determination that Plaster & Wald is a "consultant" owed an indemnity obligation by Cyclone Drilling. See Docket No. 174. Star Insurance and Cyclone Drilling did not contest this point in their responses to Zurich's motion. See Docket Nos. 223 and 233. Rather, they argue Cyclone Drilling's indemnity obligation to Zurich only arises when Cyclone Drilling's employees bring "claims, demands, and causes of action" against Continental Resources or any of the long list of others in the IADC Drilling Contract "on account of bodily injury." See Docket No. 6-5, ¶ 14.8. The argument is persuasive.

Indemnity contracts are interpreted applying the same general rules of contract interpretation that apply to other contracts. Specialized Contracting, Inc. v. St. Paul Fire & Marine Ins. Co., 825 N.W.2d 872, 877 (N.D. 2012). The construction of an indemnity contract to determine its legal

effect is a question of law for the court to decide. Id. An indemnity provision should be interpreted to give effect to the mutual intentions of the parties if it can be done consistent with rules of contract interpretation. The intention of the parties should be ascertained from the writing alone if possible. An indemnity contract must be considered as a whole with effect given to every part. The words in a contract must be given their plain, ordinary, and commonly understood meaning. Id. An indemnity agreement is "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." Id. (quoting N.D.C.C. § 22-02-01). Ambiguities in non-insurance indemnity provisions are strictly construed against the entity receiving indemnity. Id. at 878.

Zurich seeks reimbursement from Cyclone Drilling for amounts it has paid on behalf of Continental Resources under the terms of the liability insurance policy Zurich issued to Continental Resources. It is clear and undisputed that no employees of Cyclone Drilling have made claims directly against Zurich for bodily injury. Zurich would be protected from bodily injury claims. However, Zurich's obligations are contractual. Zurich's obligations arise out of its insurance contract with Continental Resources to which Cyclone Drilling was not a party. Paragraph 14.8 of the IADC Drilling Contract makes no mention of Cyclone Drilling agreeing to indemnify Continental Resources's insurers for contractually-assumed liability. There is no evidence such was the intent of the parties. The plain language of the IADC Drilling Contract limits the indemnity obligation to claims made "on account of bodily injury, death, or damage to property." See Docket No. 6-5, ¶ 14.8. This limiting language provides indemnity for tortious injuries, not contractual liability. As a practical matter, this determination is largely academic. Since Cyclone Drilling's indemnity obligation to Continental Resources is without limit, Continental Resources's insurers

(Zurich and National Union) arguably have subrogation rights against Cyclone Drilling for any amounts they have contributed to settle the claims against Continental Resources. See Tschider v. Burtts, 149 N.W.2d 710, 711 (N.D. 1967) (holding an insurer is subrogated to the rights of its insured against the responsible party).

2.    **PRIORITY OF COVERAGE**

Zurich American Insurance Company also contends, based on the language of the IADC Drilling Contract, that the insurance policy it issued to Continental Resources is excess to the Star Insurance primary and umbrella policies, and that Zurich is not obligated to participate in the defense and indemnity of Continental Resources until the Star Insurance policies are exhausted. Star Insurance has raised the same issue in its motion for summary judgment and contends Zurich and National Union are obligated to share in the defense of Continental Resources. Star Insurance contends the "other insurance" language in the respective insurance policies dictate priority between the insurers. In other words, Zurich and National Union contend priority of coverage is governed by the indemnity agreement, while Star Insurance contends priority is governed by the insurance policies.

Star Insurance Company's contention as to priority is based, in part, on the mistaken assumption that Cyclone Drilling's indemnity obligation is limited to $2 million. The Court has determined that Cyclone Drilling's indemnity obligation to Continental Resources is without limit, and that Cyclone Drilling has $6 million in coverage available to it under the Star Insurance policies. There is a $1 million in coverage available to Continental Resources under the policy issued by Zurich. The Court finds that Zurich is subrogated as to Cyclone Drilling as a consequence of

Cyclone Drilling's unlimited indemnity obligation to Continental Resources.

The Eighth Circuit Court of Appeals addressed the issue of conflicting indemnity obligations and an "other insurance" clause in  Wal-Mart Stores, Inc. v. RLI Ins. Co., 292 F.3d 583, 588 (8th Cir. 2002).  In *Wal-Mart Stores*, Wal-Mart and Cheyenne entered into a vendor agreement in which Cheyenne promised to indemnify Wal-Mart from any liability resulting from the sale of halogen lamps distributed by Cheyenne.  Id. at 585.  Cheyenne was required by the agreement to obtain at least $2 million in liability insurance.  Id.  Cheyenne obtained $1 million in primary coverage from St. Paul and $10 million in excess insurance from RLI.  Id.  Wal-Mart was covered under both these policies as well as under a policy issued by its own insurer, National Union.  Id.  A defective lamp severely injured a girl, whose family sued Wal-Mart and Cheyenne.  Id. at 585-86.  The lawsuit was settled for $11 million, with St. Paul paying the first $1 million.  Id.  RLI paid the remaining $10 million but sought to recover this amount from National Union and Wal-Mart.  Id.  Based upon general principles of insurance law, the court held that RLI could not recover its $10 million settlement payment from National Union or Wal-Mart.  The Eighth Circuit Court of Appeals explained that the indemnity agreement controlled the outcome of the insurance-allocation dispute, not the "other insurance" clauses in the insurance policies.  Id. at 587-98.  The Eighth Circuit also recognized that the broad indemnity clause in the vendor agreement created rights in Wal-Mart and its insurer which would be rendered ineffectual if the "other insurance" clause were permitted to dictate priority of coverage.  Id. at 590.

The Eighth Circuit Court of Appeals provided three reasons for its holding.  First, Cheyenne intended to and did make a valid promise to indemnify Wal-Mart and obtained liability insurance to cover the obligation.  Id. at 587.  Second, since Wal-Mart was an additional insured under the

policies issued by RLI, finding for RLI would violate the principle that insureds cannot be liable to insurers for covered losses.  Id.  Third, making Wal-Mart or its insurer liable to RLI would result in circular litigation that would ultimately result in RLI still having to cover the settlement.  Id.  The Eighth Circuit further reasoned that to hold otherwise would deny Wal-Mart the benefit of its contractual bargain, a result the Court held would be obviously incorrect.  Id. at 590, 593.

The Third and Fourth Circuit Courts of Appeal have recognized that *Wal-Mart Stores* reflects the majority position on the question of indemnity agreements and "other insurance clauses."  St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co., 365 F.3d 263, 272 (4th Cir. 2004) (finding *Wal-Mart Stores* was based upon well recognized principles that most jurisdictions follow, and predicting Virginia would do so as well); Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co., 335 F.3d 429, 436 (5th Cir. 2003) (noting a clear majority of jurisdictions recognize the principle relied on in *Wal-Mart Stores* and predicting Texas would also do so).  This Court finds the Eighth Circuit Court of Appeals opinion in *Wal-Mart Stores* to be persuasive.  As the Fifth Circuit noted, the *Wal-Mart Stores* opinion is "well considered" and this Court predicts the North Dakota Supreme Court would follow it.

In the present case, two of the factors cited by the Eighth Circuit Court of Appeals for its holding are present.  First, the IADC Drilling Contract contains a broad indemnification clause in favor of Continental Resources which requires Cyclone Drilling to obtain liability insurance, and name Continental Resources as an additional insured.  Cyclone Drilling's indemnity obligation is without limit.  Since Cyclone Drilling's indemnity obligation to Continental Resources is without limit, and Zurich is fully subrogated as to Cyclone Drilling, the Court finds that until the $6 million available to Cyclone Drilling under the Star Insurance policies is exhausted, Zurich's policy is not

implicated.  Id. at 588 (citing 15 Couch on Insurance § 219:1, at 219–7 (3d ed.1999) for the proposition that an indemnity agreement may shift the entire loss to the indemnitor's insurer and away from the indemnitee's insurer).  To hold otherwise would limit Cyclone' Drilling's indemnity obligation and deny Continental Resources the benefit of its bargain.  Such a result would be inequitable and contrary to the plain language of the IADC Drilling Contract.

The Court further finds that the "without limit" indemnity protection afforded Continental Resources by Cyclone Drilling in the IADC Drilling Contract extends to the insurers of Cyclone Drilling.  An indemnitor and its insurer bear full responsibility for covered indemnification payments, even if the indemnitee has other insurance covering the same loss.  Wal-Mart Stores, 292 F.3d at 588-89 (finding an indemnity agreement applied to obligate the indemnitor to protect the indemnitee and the indemnitee's insurer from liability arising from the settlement of a personal injury claim); Clarendon Nat. Ins. Co. v. United Fire & Cas. Co., 571 F.3d 749, 753 (8th Cir. 2009) (finding *Wal-Mart Stores* controlling and holding a broad indemnity agreement extended to the indemnitee's insurer and required exhaustion of the indemnitor's available insurance before the indemnitee's insurance was triggered).

Second, any outcome which would require Zurich or National Union to participate in the defense of Continental Resources before the Star Insurance policy limits have been exhausted would result in circuitous litigation.  There is no dispute that Cyclone Drilling's indemnity obligation is without limit.  If Zurich and National Union were required to participate in the defense of Continental Resources they would look to Cyclone Drilling for reimbursement.  Cyclone Drilling would then look to Star Insurance for coverage.  Such a result is both wasteful and impermissible. Wal-Mart Stores, 292 F.3d at 594.

The focus of Star Insurance on the language of the "other insurance" clauses in the respective policies is misplaced. Just as in *Wal-Mart Stores*, the Court need not resolve issues related to the "other insurance" clauses because the indemnity agreement controls the outcome. Wal-Mart Stores, 292 F.3d at 587. Which insurer is primary and which is excess is determined by the indemnity agreement, not the language in the policies describing the coverage as primary or excess. Id. at 590. "[I]t is the parties' rights and liabilities to each other which determine the insurance coverage; the insurance coverage does not define the parties' rights and liabilities to one another." Id. at 590 (quoting Chubb Ins. Co. of Canada v. Mid-Continent Cas. Co., 982 F. Supp. 435, 438 (S.D. Miss. 1997)).

The result is that the Star Insurance Company policies are primary as to any "other insurance" coverage which may be available, including that of Zurich and National Union, and Star Insurance is obligated to bear the loss up to its coverage limits of $6 million per occurrence.


### C.    CONTINENTAL RESOURCES'S MOTION FOR SUMMARY JUDGMENT

Continental Resources has moved, as a subrogee of M-I, for summary judgment against Cyclone Drilling contending that it was forced to defend and indemnify M-I when, under the terms of the IADC Drilling Contract, that obligation belonged to Cyclone Drilling. Continental Resources seeks reimbursement of $154,954.60, the amount Continental Resources paid to defend and indemnify M-I in the underlying litigation. M-I was dismissed from the underlying litigation on March 1, 2013. See Docket No. 214-3. Cyclone Drilling contends that its indemnity obligations are limited to $2 million and have already been satisfied. Alternatively, Cyclone Drilling contends M-I has not made any claims against it and thus Continental Resources's claims as a subrogee of

M-I fail.

Cyclone Drilling has acknowledged that the Court's prior determination in an order dated January 23, 2014, that P&W is a "consultant" within the meaning of the IADC Drilling Contract applies to M-I as well. See Docket No. 223, p. 2. While Star Insurance disputes the point, it was not a party to the IADC Drilling Contract and the Court finds Cyclone Drilling's admission conclusive on the issue. Further, the affidavit of M-I Senior Manager Timothy Sorenson clearly establishes that M-I is an oil and gas consulting company which performs a wide range of services in the oil and gas exploration and development industry, and it was providing engineering consulting services to Continental Resources on the well-site at the time of the accident which injured the Cyclone Drilling employees. See Docket No. 214-1.

The Court's prior order granting partial summary judgment, combined with the findings the Court has made in this order and Cyclone Drilling's admission, provide answers to most of the questions posed in Continental Resources's motion. Cyclone Drilling owes Continental Resources an indemnity obligation as per the terms of the IADC Drilling Contract. M-I is a "consultant" within the meaning of the IADC Drilling Contract and is also entitled to indemnification from Cyclone Drilling. It is clear that Cyclone Drilling's indemnity obligation to Continental Resources and M-I is without limit.

Thus, the only remaining question in Continental Resources's motion is whether principles of equitable subrogation entitle it to be reimbursed by Cyclone Drilling and/or Star Insurance for the defense costs it incurred on behalf of M-I. There is no question Cyclone Drilling owed M-I an indemnity obligation and thus should have provided M-I with a defense. Continental Resources paid for M-I's defense after Star Insurance and/or Cyclone Drilling refused to do so. Continental

Resources was contractually obligated to do so by the terms of the master service contract it had entered into with M-I. See Docket Nos. 6-6, p. 5, 203, 203-1 and 203-2. Cyclone Drilling contends the issue is not properly before the Court and that, even if it was, Continental Resources is not entitled to be reimbursed.

## 1. WHETHER THE REIMBURSEMENT ISSUE IS PROPERLY PRESENTED

Cyclone Drilling and Star Insurance contend the reimbursement issue is not properly presented because: 1) M-I has not made any counter-claims against Star Insurance or cross-claims against Cyclone Drilling, 2) Continental Resources did not reference the M-I obligation in its cross-claim against Cyclone Drilling, and 3) there is no record of M-I demanding a defense and indemnity from Cyclone Drilling.

As Continental Resources points out, this argument puts form over substance. Star Insurance raised the issue of M-I's right to be indemnified by Star Insurance and Cyclone Drilling in its amended complaint. See Docket. No. 6, ¶¶ 23-24, 29, 63, 71, 72, 99, and 106. Star Insurance Company's declaratory judgment action alleges neither it nor Cyclone Drilling owe an indemnification obligation to M-I. Specifically, Star Insurance states in its amended complaint as follows:

29. Continental, P&W, and M-I have sought defense and indemnification from Cyclone or Star (or both), either directly or indirectly.

63. Continental and M-I have requested coverage from Star for M-I's liabilities in the Morton Action. Star denies that it is obligated to provide coverage to M-I or is otherwise responsible for the defense or indemnification of M-I.

72. Neither the Star Policies nor the N.D. Drilling Contract obligate Star to provide any coverage for any of P&W's or M-I's liabilities that were, or allegedly were, assumed by Continental or Cyclone.

99.     Under the N.D. Drilling Contract, Cyclone is not contractually obligated to defend or indemnify P&W or M-I as members of the "Continental Group" or otherwise in connection with the underlying claims.

106.    Star seeks a declaration that it has no obligation to provide coverage (defense or indemnity) to M-I either directly or on behalf of Continental under the Star Primary Policy or Star Umbrella Policy in connection with the Underlying Claims or any other action or claim.

See Docket No. 6, ¶¶ 29, 63, 72, 99, and 106.

The Court finds that these allegations put the issue of whether Cyclone Drilling and/or Star Insurance have an obligation to indemnify M-I squarely on the table. In its amended complaint Star Insurance has sought broad and all encompassing determinations regarding the obligations of the parties. It is not improper for Continental Resources, as the party who has paid M-I's defense costs, to seek a determination on the reimbursement issue. Further, Star Insurance has raised the issue of whether Cyclone Drilling owes an indemnity obligation to M-I, and whether Continental Resources must be reimbursed for paying for M-I's defense in it own motion for summary judgment. See Docket No. 220, pp. 13-15, 27-28. To avoid the issue here would only prolong the litigation.

## 2.     **SUBROGATION**

Continental Resources contends principles of equitable subrogation compel the conclusion that it is entitled to be reimbursed by Cyclone Drilling for providing a defense to M-I, because it was Cyclone Drilling that should have done so in the first place. Cyclone Drilling states that it has been unable to locate a demand for indemnification being made but admits that it was aware of indirect demands made to its insurer (Star Insurance), and that it has been aware of the controversy as to who should pay for M-I's defense throughout the litigation. See Docket No. 223, p. 3. M-I Senior Manager Timothy Sorenson states in his affidavit that he "understood" M-I had requested a defense

and indemnification from Cyclone Drilling but Cyclone Drilling had declined. <u>See</u> Docket No. 214-1. Star Insurance put the issue in play when it filed this declaratory judgment action, and there is no question Cyclone Drilling owes M-I an indemnity obligation. While the paper trail is thin, there is no question all parties were fully aware that M-I was seeking a defense and indemnification from Cyclone Drilling and/or Star Insurance, and a resolution of the issue will not come as a surprise.

"Subrogation is an equitable remedy that provides for an adjustment between the parties to secure the ultimate discharge of a debt by the person who, in equity and good conscience, ought to pay for it." <u>St. Paul Fire & Marine Ins. Co. v. Amerada Hess Corp.</u>, 275 N.W.2d 304, 308 (N.D. 1979). Equitable subrogation is founded on principles of equity and justice and is intended to protect the rights of one who has paid an obligation which should be imposed on another. <u>State Farm Mut. Ins. Co. v. Wee</u>, 196 N.W.2d 54, 59-60. (N.D. 1971); <u>Am. Commercial Lines, Inc. v. Valley Line Co.</u>, 529 F.2d 921, 924 (8th Cir. 1976). The doctrine permits a party who is not a volunteer or intermeddler to stand in the shoes of another with reference to all lawful claims and rights. <u>BancInsure, Inc. v. BNC Nat. Bank, N.A.</u>, 263 F.3d 766, 772-73 (N.D. 2001). Equitable subrogation rests on the principle that no one should be enriched by another's loss. <u>In re Yanke</u>, 230 B.R. 374, 377 (8th Cir. 1999). The doctrine is highly favored and is to be given a liberal application. <u>Id.</u> at 379.

The Court finds that the equities and the law compel the finding that Continental Resources is entitled to be reimbursed by Cyclone Drilling and/or Star Insurance for the costs it incurred in defending M-I. The Court has determined that M-I is a "consultant" under the terms of the IADC Drilling Contract. Therefore, Cyclone Drilling owes both Continental Resources and M-I defense and indemnity obligations under the terms of the IADC Drilling Contract. This indemnity obligation

is "without limit." Any obligation Continental Resources had to indemnify M-I is clearly secondary to Cyclone Drilling's obligation. Cyclone Drilling agreed to indemnify Continental Resources and its "consultants" under the plain language of the IADC Drilling Contract. Cyclone Drilling should have paid for M-I's defense but failed to do so. Star Insurance is Cyclone Drilling's insurer, and as a result, the obligation ultimately falls to it, up to its coverage limits. Cyclone Drilling and/or Star Insurance should not be permitted to benefit from their refusal to fulfill their obligations. The Court finds that Continental Resources is entitled to be indemnified by Cyclone Drilling and/or Star Insurance for amounts reasonably expended in defense of M-I.

### D.     TRAVELERS' MOTION TO DISMISS AND/OR SUMMARY JUDGMENT

Travelers Property Casualty Company of America raises two issues in its motion for summary judgment. First, Travelers contends Star Insurance lacks standing to pursue any claims against Travelers because Star Insurance was not a party to the master service contract between Continental Resources and M-I, or the insurance policy Travelers issued to M-I. Travelers asks that Star Insurance Company's claims against it be dismissed. Second, and in the alternative, Travelers contends Continental Resources is not entitled to coverage under the Travelers policy for the injuries sustained by the Cyclone Drilling employees. Star Insurance contends it has standing to bring this declaratory judgment action. Star Insurance seeks a declaration from the Court that Travelers owes coverage to Continental Resources as an additional insured under the policy Travelers issued to M-I.

#### 1.     STANDING

Travelers first contends Star Insurance lacks standing to seek a declaration of rights and

obligations under indemnity contracts and insurance policies to which it is not a party. Specifically, Travelers contends Star Insurance is not a party to the insurance policy Travelers issued to M-I, or the contract between M-I and Continental Resources, and thus lacks standing. A coverage dispute between insurance companies where one carrier has demanded the other be fully involved in the defense of personal injury claims, creates an actual controversy sufficient to support a declaratory judgment action to determine priority of coverage. Clarendon Nat. Ins. Co., 571 F.3d at 753. Star Insurance has demanded Travelers be fully involved and share in the defense of Continental Resources. The underlying personal injury actions have been settled and substantial defense costs have been incurred. A determination of each parties' rights and/or obligations has a ripple effect on the rights and obligations of the others. The Court finds there is an actual controversy between Star Insurance and Travelers and, as a result, Star Insurance has standing to bring this action.

### 2. TRAVELERS' OBLIGATION TO CONTINENTAL RESOURCES

Star Insurance contends Travelers owes coverage to Continental Resources as an additional insured under the policy Travelers issued to M-I. Star Insurance bases it position on the language of the insurance policy. Travelers contends M-I owes no indemnity obligation to Continental Resources in the first instance and thus is not obligated to share in the defense of Continental Resources.

Continental Resources, which has agreed to and is fully defending and indemnifying M-I in the underlying lawsuits, has not taken a position on the issues raised in Travelers motion. Continental Resources has not sought indemnity from M-I. Both Continental Resources and M-I requested coverage from Star Insurance. Star Insurance is defending Continental Resources but

refused to defend or indemnify M-I. The Court has determined that M-I is a "consultant" within the meaning of the IADC Drilling Contract and is entitled to indemnification from Cyclone Drilling. The Court has also determined that Continental Resources is entitled to subrogation from Cyclone Drilling and/or Star Insurance for the amounts reasonably expended in defending M-I.

The indemnity obligations between Continental Resources and M-I are defined by the master service contract. See Docket No. 6-6. Which insurer is primary and which is excess is determined by the indemnity agreement, not the language in the insurance policies describing the coverage as primary or excess. See Wal-Mart Stores, 292 F.3d at 590. Star Insurance Company's arguments based on the language of the insurance policy Travelers issued to M-I would require the Court to ignore the plain language of the master service contract between Continental Resources and M-I. To do so would be contrary to the Eighth Circuit's holding in *Wal-Mart Stores.*

The master service contract requires M-I to indemnify Continental Resources for claims brought by its employees and subcontractors. See Docket No. 6-6, ¶ 4.1.[1] The Court finds that there is no language in the master service contract between M-I and Continental Resources that requires M-I to indemnify Continental Resources for claims brought against it by the employees of Cyclone

---

[1] Paragraph 4.1 of master service contract between Continental Resources and M-I provides as follows:

4. **INDEMNITY**:

4.1 Contractor agrees to indemnify, defend, and save harmless Continental Group (as previously defined in Paragraph 3.1) from and against any and all claims, demands, judgments, defense costs, or suits (including. but not limited to, claims, demands, judgments or suits for property damage, bodily injury, illness, disease, death or for loss of services, or wages or for loss of consortium or society) by Contractor or its Subcontractors or any employees (or their spouses, relatives, or dependants) of Contractor or its Subcontractors (or based on or arising out of such claims) In any way, directly or indirectly, arising out of or related to the performance of this Contract or the use by Contractor or its employees of. or their presence on, any premises owned, operated or controlled by Continental Group.

Drilling or any other members of the "Continental Group." In fact, the Addendum to the master service contract requires just the opposite, i.e., Continental Resources must indemnify M-I.[2] See Docket No. 6-6, p. 5. Star Insurance Company's reliance on paragraph 4.2 is misplaced as the Addendum altered the contract and requires Continental Resources to defend and indemnify M-I for the injuries or death of employees of the Continental Group. See Docket No. 6-6, p. 5. The underlying claims in this case were for injury to employees of Cyclone Drilling, a subcontractor of Continental Resources, and a member of the Continental Group. See Docket No. 6-6, ¶ 3.1. The Court finds Star Insurance Company's suggestion that M-I must indemnify Cyclone Drilling to be unpersuasive. The argument is contrary to the plain language of paragraph two of the Addendum which requires Continental Resources to "defend and indemnify" M-I "from and against, any and all claims" for "injury and death of employees of Continental Group." See Docket No. 6-6, p. 5. The Addendum clearly provides that its provisions are made "notwithstanding anything in the above master service contract . . . to the contrary." " See Docket No. 6-6, p. 5. Thus, the Court finds that neither M-I nor Travelers have an obligation to defend and indemnify Continental Resources.

Continental Resources accepted the defense of M-I when Cyclone Drilling and Star Insurance refused to do so. The Court has concluded that this obligation belonged to Cyclone

---

[2] Paragraph two of the addendum to the master service contract between Continental Resources and M-I provides as follows:

> 2.       Contractor and its employees shall not be liable for, and Continental shall defend and indemnify Contractor and its employees from and against, any and all claims, causes of action and liabilities for
>
> . . .
>
>    -    injury to or death of employees of Continental Group,
>
> regardless of any combination of the sole or concurrent, active or passive  negligence or fault (strict liability) or a contractually assumed obligation of, or other breach of duty by, the indemnitees.

Drilling and/or Star Insurance in the first instance, and Continental Resources is entitled to be reimbursed under principles of equitable subrogation. The Court expressly finds that neither M-I nor Travelers have an obligation to participate in the defense of Continental Resources or contribute to the settlement of the underlying actions.

### E. STAR INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Star Insurance raises multiple issues in its motion for summary judgment. Most of those issues have been addressed in the Court's earlier findings in this order. The only issues which remain relate to National Union. Star Insurance contends National Union is obligated to share in the defense of Continental Resources. Star Insurance bases this contention on the "other insurance" provisions in the policies issued by National Union and Star Insurance. The Court has addressed and rejected the "other insurance" argument in relation to the policy issued by Zurich. See Supra pp. 15-20. The same analysis applies to National Union. The Court finds that priority of coverage is controlled by the language of the indemnity agreement rather than the provisions in the insurance policies. See Wal-Mart Stores, 292 F.3d at 590. The Court further finds that since Cyclone Drilling's indemnity obligation is without limit, National Union has no obligation to share in the defense of Continental Resources unless and until the coverage available under the policies issued by Star Insurance has been exhausted.

## IV. CONCLUSION

For the reasons set forth above, the motions for summary judgment (Docket Nos. 177, 201,

213, 215, and 219) filed by Star Insurance Company, Continental Resources Inc., Zurich American Insurance Company, and Travelers Property Casualty Company of America are **GRANTED in part and DENIED in part** as explained herein. The Court orders and declares as follows:

1) Cyclone Drilling's indemnity obligations under the IADC Drilling Contract are without limit.

2) Continental Resources insurers (Zurich American Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA) are subrogated to Continental Resources right to defense and indemnity from Cyclone Drilling for any amounts Zurich and National Union contributed towards the settlement of the underlying personal injury personal injury claims against Continental Resources.

3) The insurance policies Star Insurance issued to Cyclone Drilling are primary. All of the policies issued by Zurich, National Union, and Travelers are excess. Star Insurance is obligated to bear the loss up to its policy limits of $6 million per occurrence ($1 million in general liability coverage per occurrence plus $5 million per occurrence under the umbrella policy).

4) M-I is a "consultant" within the meaning of paragraph 14.13 of the IADC Drilling Contract and is entitled to the indemnification protections specified in the contract.

5) Continental Resources is entitled to be indemnified by Cyclone Drilling and/or Star Insurance for all amounts reasonably expended in the defense of M-I.

6) M-I and Travelers have no obligation to participate in the defense of Continental Resources or contribute to the settlement of the underlying actions.

**IT IS SO ORDERED.**

Dated this 24th day of February, 2015.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court